# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORTEZ CHANDLER, | 1:10-CV-00651 AWI GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JAMES D. HARTLEY, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### RELEVANT HISTORY[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction in Riverside County Superior Court in 1992 of first degree murder with the use of a firearm. He is serving a sentence of twenty-six years to life with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he claims the California Board of Parole Hearings ("Board") violated his due process rights in its June 10, 2008, decision

---

[1] This information is taken from the state court documents attached to Respondent's answer and are not subject to dispute.

1

finding Petitioner unsuitable for parole.  Petitioner argues the state courts unreasonably applied the some evidence standard as there was no evidence to support the parole board's finding of current dangerousness.

Petitioner filed a habeas court petition challenging the Board's 2008 decision in the Riverside County Superior Court.  The petition was denied on April 12, 2009, for failure to state a prima facie factual case supporting release.  On May 22, 2009, Petitioner filed a habeas petition in the California Court of Appeal, Fourth Appellate District.  On June 22, 2009, the appellate court summarily denied the petition.  Petitioner next filed a habeas petition in the California Supreme Court on August 18, 2009.  The petition was summarily denied on January 13, 2010.

Petitioner filed the instant federal petition for writ of habeas corpus on April 14, 2010.  Respondent filed an answer to the petition on July 6, 2010.  Petitioner filed a traverse on August 16, 2010.

## STATEMENT OF FACTS[2]

On September 16, 1991, the Riverside Police were notified of a traffic accident at the location of Jurupa Avenue in Fremont.  On arriving at the scene, the officers observed a deceased male in the vehicle.  The car was observed to have several bullet holes in the window in the driver's side, and the victim was identified as Wilbert Washington, age 25 at the time.  He was bleeding from several areas of the body.  It was subsequently determined that he had suffered gunshot wounds to his left shoulder, left hand, and lower back.

Previously that night, Petitioner and his crime partner were at a nearby bar.  Petitioner's crime partner, Williams, had a confrontation with the victim which resulted in the victim striking Williams.  Williams became very upset at having been stricken and decided to seek revenge.  Petitioner, Williams, and his crime partners grouped together, changed vehicles, and drove off looking for the victim.  They drove to several locations looking for the victim and finally spotted the victim driving in the vicinity of a hospital.  The group followed and then drove alongside the victim's vehicle.  At that point, Petitioner took out a gun and fired multiple shots through the

---

[2] This information is derived from the summary of the crime set forth in the Board's decision.

driver's window of the vehicle. The victim's vehicle swerved off the road and went up an embankment. Williams then exited the vehicle, walked over to the victim's vehicle and fired two more shots into the vehicle.

## DISCUSSION

I.    Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

§ 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.     Review of Petition

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme. Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010). "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall

>include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

>(1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
>>(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>>(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>>(C) The victim was abused, defiled or mutilated during or after the offense.
>>(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>>(E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
>(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
>(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.'
>
>(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
>(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
>(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

>Section 2402(d) sets forth the circumstances tending to show suitability which include:
>
>(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
>
>(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.
>
>(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of

5

  remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

  (4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

  (5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

  (6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

  (7) Age. The prisoner's present age reduces the probability of recidivism.

  (8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

  (9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

  The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

  Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010). Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

  The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not

merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

     A.     State Court Decisions

The California Supreme Court and California Court of Appeal summarily denied Petitioner's habeas petitions. The superior court denied the petition finding that Petitioner had failed to present a prima facie factual case supporting release.

     B.     2008 Board Decision

In this case, the Board found Petitioner unsuitable for parole based on the circumstances of the commitment offense, his institutional behavior, his psychological evaluation, and his lack of sufficient self-help programming.

The Board first determined that the commitment offense was committed in an especially

heinous, atrocious or cruel manner pursuant to Cal. Code Regs., tit. 15, § 2402(c)(1). First, the Board determined that the offense was carried out in a dispassionate and calculated manner. Cal. Code Regs., tit. 15, § 2402(c)(1)(B). In support of this finding, the Board noted that Petitioner and his crime partners planned and prepared for this murder. The group specifically drove to several locations searching for the victim, and when they found him, they murdered him. First, they shot through the driver's window at the victim. Then, when the vehicle crashed, one of the crime partners walked up to the vehicle and, in a cold-blooded, execution-style manner, fired two more shots at the wounded victim. The Board also determined that the motive for the crime was trivial. The Board stated that a planned murder of a victim in retaliation for being injured in a fistfight is a very trivial motive. Given these facts, there is certainly some evidence to support the Board's finding that the offense was committed in an especially heinous, atrocious or cruel manner.

The California Supreme Court has held that "[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." In re Rosenkrantz, 29 Cal.4th 616, 682 (2002). However, in cases where prisoners have served their suggested base terms and have demonstrated strong evidence of rehabilitation and no other evidence of current dangerousness, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole. In re Lawrence, 44 Cal.4th 1191, 1211 (2008). In this case, Petitioner has not yet served his minimum term of twenty-six years. In addition, as will be discussed below, the Board relied on factors other than just the commitment offense to find Petitioner unsuitable.

The Board relied on Petitioner's institutional behavior pursuant to Cal. Code Regs., tit. 15, § 2402(c)(6). Petitioner was an active member of a prison gang for several years during the beginning of his incarceration. In addition, he had sustained six (6) CDC-115 serious rules violations while incarcerated, and some included violence such as threatening staff and participating in a riot. In addition to these serious incidents, Petitioner also sustained several CDC-128a counseling chronos for negative behavior. The Board noted that these incidents demonstrated defiant behavior and a failure to control emotions. In light of Petitioner's negative institutional behavior, there is some evidence to support the Board's finding that Petitioner


continued to pose an unreasonable risk of danger to the public if released.

The Board also considered Petitioner's psychological evaluation as well as his failure to program sufficiently. Cal. Code Regs., tit. 15, §§ 2402(b), (c)(5). The Board noted that Petitioner had a substance abuse problem. Although he had previously programmed in Alcoholics Anonymous and Narcotics Anonymous, he had not done so in the past three years. In addition, at the time he was programming in AA and NA, he had sustained a serious rules violation for possession of inmate-manufactured alcohol. The Board concluded that Petitioner had failed to demonstrate rehabilitation and determined Petitioner needed to show that he can remain free of drugs and alcohol for an extended period of time. Also, the psychological report was not totally supportive of release in that the psychologist had determined that Petitioner posed a low to moderate risk for future violence if released. These facts also constitute probative evidence supporting the Board's finding of unsuitability.

The Board also considered several positive factors indicating suitability. In particular, Petitioner's parole plans were very detailed and realistic. He had also demonstrated remorse and insight into his offense. However, his positive gains were recent. After considering the factors in favor of suitability, the Board concluded that the positive aspects of Petitioner's behavior did not outweigh the factors of unsuitability. The Board determined that the circumstances of Petitioner's commitment offense, his negative institutional behavior, lack of self-help programming, and his psychological evaluation, were more probative of a danger to the public should Petitioner be released. The state courts' determination that there was some evidence to support the Board's 2008 decision is not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record. Accordingly, federal habeas corpus relief is unavailable.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District

Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 8, 2010**                                  **/s/ Gary S. Austin**
                                                                                                         UNITED STATES MAGISTRATE JUDGE